The next case is United States of America v. Christopher Booker. Mr. Dreier. Good morning, Your Honors. May it please the Court. Thomas A. Dreier on behalf of the appellant Christopher Booker. I would like to reserve two minutes for rebuttal. Initially, I would just like to tell the Court that I am conceding on Issue No. 2, which concerns the suppression hearing. I was not aware of the Rose case when I wrote this brief and therefore analyzed it under the plain error standard. Thereafter, the government filed this brief in which it cited Rose, and it's clear that Rose applies. It is clear that Federal Rural Criminal Procedure 12 trumps Federal Rural Criminal Procedure 52, and that I do not have any argument as to Issue No. 2. Thank you for your candor on that. Your Honors, as far as Issue No. 1 is concerned, it's the defense contention that the district court failed to advise Mr. Booker of the range of potential sentences which he faced in this criminal matter when it conducted the counsel waiver colloquy. The court did not advise Mr. Booker of three areas, in three areas, and all of which are very major. The first one is that the court did not advise Mr. Booker that he was facing a mandatory minimum jail sentence if he were to be convicted of the gun charge under 18 U.S. Code Section 924C. Because Mr. Booker had previously been convicted of a 924C offense, he was now, if he were to be convicted in this case, he would then have that prior on his record, and the mandatory minimum would go five times increase, from five years to 25 years. And the court did not advise Mr. Booker of that fact. The second issue is that the court failed to advise Mr. Booker that that 25-year sentence, assuming, of course, he had been convicted at the upcoming trial, had to run consecutively to any and all other sentences which the judge imposed on him on any other convictions that might follow through at that trial. So it was not only a 25-year mandatory minimum, but a consecutive 25-year mandatory minimum. And, Your Honor, the third issue would be what was not mentioned by me in my brief, but by the government in its brief, and that was that the court failed to advise Mr. Booker of the maximum penalty in the event that he was convicted under 924C. So we do have the lack of information concerning the wide range from the mandatory minimum, and the consecutive nature of that mandatory minimum up to the maximum for the 924C offense. And, Your Honor, based on that, based on Ferretta, other U.S. Supreme Court cases, based on the Peppers case from this court, the Jones case from this court, it is clear that although the court followed the 14-step process, it failed to do that one thing, and that was to give the potential range of sentences, the potential range of punishments to Mr. Booker so that he could have that information in deciding whether or not he wanted to represent himself at the upcoming trial. Better be careful what you ask for. You might get it. Isn't that the truth, Your Honor? I mean, so what you're saying is you want a trial, and then you want to face whatever could come your way if you're convicted? That is Mr. Booker's opinion, Your Honor. Yes, that is correct. Are these all on Count 5? All my arguments go to Count 5, the gun charge, Your Honor, nothing with Count 1 or Count 4. So if we agree with you, is it a retrial just on Count 5? Your Honor, I do not think so. I think the Supreme Court case law and the Third Circuit case law says that this is a structural error which requires the granting of a new trial, and I think the new trial would have to be for all three charges. You know what occurred to me? Suppose the government says this, okay, this sentence, it wasn't advised correctly, but we agree that he has to get relief. Why can't, and now I realize it could be an illegal sentence, why can't he be sentenced in accordance with what the court said? And if he is sentenced in accordance with what the court said, even though it might be the same sentence, but the court had a lesser option, we accept that, then you get complete relief.  Now the point is this, the judge said he's subject to certain sentences, and you're saying that the sentences he was subject to if he was convicted would be more than that. Much more. Much more, okay. So we say, yeah, you made a mistake, government, and he's entitled to a new trial on everything. A trial, not a new trial, he's entitled, yeah, a new trial because he was convicted, per se. All right, government says, okay, we're willing to waive what would otherwise be required and tell the judge this is, you may now sentence him legally in accordance with what you told him the sentence would be. Then why has he been injured? In other words, if the judge has the power to impose the sentence that he told him he was subject to, now he might not impose it, he might impose more because he always had that right, but resentence him, and if he's willing, if the government's willing to not worry about the illegal part, and I don't think they will worry because the sentence is so long anyhow, but if the government's willing, then why has he been injured if he gets what the court said? Well, Judge, if that were to happen and instead of getting a consecutive 25-year, 300-month sentence, Mr. Booker received a consecutive five-year sentence, I would think Mr. Booker would be happy with that and he would be agreeable to that. Well, the government might go for that because he still ends up with a king-size sentence. Now, but the point is that the judge didn't say he'd get that. The judge said it could be consecutive or concurrent. Yeah, the judge used the word may, not must. May, yeah. So he could still, consistent with what the judge said, be given consecutive sentences. Because the judge didn't care. The judge didn't tell him, you're subject to a concurrent sentence. He said, you may get. The judge said, you may get a consecutive sentence. Right. So he knew when he went pro se that he was subject to that risk. Right. And he also knew that five years was only a minimum. Correct. So the judge could give him the same sentence and say, yeah, that's within what I told him I could give him and now I recognize I have more discretion. That's my sentence. But, Judge, he's got to give him, according to the case law, a range. And in this case, he didn't give an upper level, an upper end of the range. He simply said it's five years, could be more. And the difference between 5 and 10 or 5 and 25 is huge. He didn't use the 10, but. He wouldn't have told him the truth. It's got to be a minimum of five. But he didn't assure him it couldn't be much more. I think that's the purpose of the case law, Your Honor, so that the defendant has all the information about his exposure when he's deciding whether or not he wants to represent himself at the upcoming trial. But the judge, the error here is that the judge misstated it. But he wouldn't be misstating it. Maybe it was a little, maybe he should have told him more, but that would be correct. He wouldn't have made a mistake. In other words, your complaint is that he misled him. He didn't tell him correctly what the sentence could be. Correct. And that damage is done as soon as he walks into court and represents himself? At the trial. Because he might have been willing to represent himself if he's facing 10 years' exposure, but if he's told he's facing 40, he might say, oh, no, that's serious. I want to make sure I have a look. And that's exactly what Mr. Booker told me during telephone conversations when we were discussing the brief. Let me ask you this question. Suppose he was told incorrect information, but it was less. I don't, well, still, the case law says it's a structural error. It's not harmless. Not susceptible to harmless error analysis, right? Correct. I don't think that would change the result. Well, my only point is the way you see this is bright line rule. An error either way, right, less or more, is an error and essentially eviscerates any knowing and willfulness or knowing and intentional or knowing involuntariness in the decision to go pro se. I think that's the correct analysis from the law, but as a practical consideration, I don't think anyone would be here complaining if the example you just posited was what really happened. Well, I presume, I guess if it were less, the government would come in. Nobody from my side. Right. If there are no further questions. No, we'll hear you on rebuttal. Thank you, Mr. Zausmer. Thank you. Good afternoon, Your Honor. May it please the Court, Robert Zausmer on behalf of the government. The question here is whether the waiver of counsel was knowing and voluntary. How can it be knowing and voluntary if you have incorrect information? Because there is not a bright line rule, to use your term. The question is, did he make a knowing and intelligent choice? And the mistake here, and there was a mistake, which I will talk about, but the mistake is not significant in light of the entire record. What would be significant? An example of significant and what I'm going to get to is what's different about this case, what's unique about this case is all the other time that he's already serving that I'm going to talk about. Why is that relevant? Because in the average case, for example, Mr. Dreyer suggesting on 924C, he was mistakenly told that the mandatory minimum was five years. And he also mistakenly was not told, as Mr. Dreyer pointed out this morning, he was not told the maximum. The maximum for 924C is life. So in the average case, if a defendant was charged with 924C, it was his first case, and he appeared before the Court and said he wanted to waive counsel. And the judge said to him, you're looking at a mandatory of five years, and was not told the maximum was life. I would not be standing here before you today. We would concede that case. That's where there would be an error. Because if somebody goes to trial representing himself thinking I'm taking a shot at five years, but really he's facing life, that's not an informed decision. What's very different about Mr. Booker is that he was already serving a minimum sentence in prison for multiple convictions of a minimum of 30 years and a maximum of 45 years. And why should that matter? Well, because what then Judge Padova does tell him is that you're looking, and it's mistaken in that it's too low, but he does tell him you could possibly get another 30 years in this case. He tells him you're looking at five years for Count 1, which is correct, 20 years for Count 4, also correct, and five years for Count 5, too low. And he tells him that can run consecutively to any sentence. That's another 30 years. Okay. So when Mr. Sanders comes here with a case next week and the guy was to be sentenced to five years, right, or he was doing five years already and the mistake in information from the district court judge was not of the magnitude that we've been speaking. It was maybe five years when he should have informed him of 10 years. Is that material? Is that an instance where we should say, yeah, that sounds problematic? I think the answer is possibly no, possibly the government can prevail there, but you have to look at the totality. What this Court said in Peppers and in Jones is that there's no talismanic inquiry here. The Court has outlined the questions that it's helpful to ask, but the Court has to look at the totality of the circumstances to decide whether this waiver was knowing and voluntary. And this is only one part of it, and I'm going to talk about the other parts as well. So to answer your question, five versus 10, maybe, maybe not, I'd want to know more about the colloquy that was involved there. But here you have a man who's 30 years old who's already serving a minimum of 30 and is told by Judge Padova he can get a consecutive 30. Doing the math here, which is not difficult, he's being told he can be imprisoned until age 90. And so the position of the defense here is that I was told I could be incarcerated now for up to 60 years until age 90, but had I known that I could have gotten another 20 years or I could have gotten life, I wanted a lawyer. That's not credible. Can I challenge you on the facts? I want to make sure that I'm certain of this. I thought he was not told that it would be 25 consecutive. He was told that it could be up to the mandatory minimum was five and it could be up to 25, but he wasn't told that it would be a mandatory of 25 and it would be consecutive. Right. He was not told 25 at all. All he was told with regard to count five was five years. But he was told, and this is very important, he was told minimum of five. And if that were all we were here to argue about, I think my position would be troubling. If someone is told a minimum, I'm sure that does create an inference that you could get more, but the defendant is entitled to better advice than that. Let's assume we agree. Let's assume for a minute we agree with you that it's quite implausible that this would have made a difference to Mr. Booker. How do you get around Moskovitz and what we said in that case? And I'll quote you the language. We said that to ensure a defendant truly appreciates the dangers and disadvantages of self-representation, his waiver must be made with an apprehension of the nature of the charges. No problem here for you. The statutory offenses included with them, no problem for you. And the range of allowable punishments there under. I mean, we would have to reverse that language in Moskovitz at the end that I just read, would we not? I don't believe so, Your Honor. I think that this Court has, as I said, never set a firm rule, and I don't think it would be advised, that any mistake in advising regard to penalty makes the district court do all of this over again. That's a straw man. Let's focus on the range of allowable punishments. How much time I as the defendant am exposed to? Let's focus on that. That's serious business. And we said in Moskovitz that they have to be told the range of allowable punishments. How do you get out from under that? Sure. What I'm saying is this Court has held that he must be told the range of available punishments, and I'm further acknowledging in this case there was a mistake in that regard. The judge should have told him. And that equals structural error under the case law. No. Now, here we need to, if I may, Your Honor, we need to break down the standard of review here. The standard of review is, the question is, was this waiver voluntary and knowing? That is subject to plenary review. This Court uses its own judgment, looks at all the facts, and makes a decision as to whether this man made a voluntary and knowing waiver. It's only if this Court finds that the waiver was not knowing and voluntary, that it then cannot apply plain error review, that it's structural error. Because, of course, the government would want to appear and say, oh, okay, fine, it was not knowing and voluntary, but the evidence was overwhelming at trial, he did a great job defending himself, he could make all sorts of arguments, and the courts have prohibited that. Okay. That's a good argument, I think. But what about Moskowitz again? In Moskowitz, punishment was not discussed. Right. And here we've got punishment discussed wrongly. Right. But here we have an extreme case that's been presented to the Court where the defendant is told explicitly by the judge, you can be in prison until age 90. And the mistake is the full range, actually, he could be in jail for the rest of his natural life, assuming he survives that long. Could be in prison and will be in prison is quite different, even for recidivists, because a recidivist would think, well, you know, when they tell me I could do 40, that means I do 20 typically, or, you know, especially if he's been in the state system. Well, there we get to a question as to the mandatory versus minimum. The courts, as I read the cases, the requirement is that the defendant be told the maximum. In fact, if you look at the- Not only the maximum, but you've got to be told, I mean, the consecutive, that's a big deal, right? Oh, absolutely. But given what- I guess what I'm suggesting, Mr. Zalzer, is why is it enough to tell someone you might be in jail until you're 90? That doesn't tell me the kind of information like you're going to die in jail unless your conviction gets overturned, or, by the way, the 25 is going to be consecutive, and, you know, someone who's been in the justice system knows the difference between that and concurrent. I mean, these are really important things that one would want to know. I certainly agree, but, again, I think it's important to look at the facts of this case, where the gentleman is already, not mandatorily, absolutely serving the next 30 years in prison because of these other convictions and told- But just think of what you're saying. Okay, we know he's going to be in jail until 60, so is it that big a deal that he knew he could be in jail until 90, as opposed to knowing if you're convicted, you will absolutely, positively, without doubt, be in jail until you're 90? Don't you think that in some decision, I know this isn't the standard, but I'm using it anyway, that in some decision important to your life, you'd want to know whether positively, absolutely, until you're 90, X is going to happen. You're going to have the worst mother-in-law of all time. Mine is actually okay. But, Your Honor, let's be, if I may, specific about the facts. He is told that it's a five-year mandatory minimum on count five instead of 25 years, so it's a 20-year mistake in what Your Honor is talking about. He is actually told it's going to be mandatory to age 65, to use my analysis, instead of being told age 85. That's a mistake, and it's not the way things should be done. It's also not the way things should be done for the court to have done this ex parte, where the prosecution didn't have a chance to correct it. So it's a mistake. I'm not here to deny that. What I am asking this court to do is look at the totality of the circumstances here. This is a gentleman. So, first of all, he has to say that, oh, if it's 85 versus 65, I absolutely want a lawyer. He never said that until the appeal. I think there's a real question of credibility here. Also, if we stand back and look at the full record here, this was a person who was intent on representing himself. In fact, in the brief, not only, in my friend Mr. Dreyer's brief, not only does it represent what he learned from his client, that he would have insisted on a lawyer if he knew we were looking at more time, it also says the only reason I asked to go pro se was because my lawyer wasn't prepared. That statement, only on appeal, is flatly contradicted by the record. If you look at the record, you see that Mr. Booker was really adamant about representing himself. Never through the course of the district court proceedings, including through the moment he was sentenced, and by the way, the actual sentence he received is less than what the judge warned him he could get. Never did Mr. Booker say to the court, and he was not shy, that he didn't want to represent himself. In fact- Did the judge know what the correct sentence could be at the time he sentenced him? Yes, he did. Okay. Suppose you heard what I said to the counsel. Suppose the remedy in Moskowitz wasn't a new trial, it was a new sentence. Suppose we said, okay, sentence him again, but take into account and consider that your sentence can be in accordance with what you said originally. Would that be acceptable? It would be acceptable to us. I have to think more about- I'm talking about the remedy, because that wouldn't be harmless error, because you'd be reversing. It would be a question, well, what's the remedy? That would be consistent with Moskowitz. And then what would happen is the judge could sentence him to what he warned him, which is five years on count one, 20 years on count four, five years on count five, and have the option to run them consecutively. If that were to happen, it's very-I think it's extremely likely that Mr. Booker is going to get exactly the same sentence, because one other feature- Would the government say, okay, fine, even though the sentence might be illegal, because it's too short, it's okay? Well, I think for him to get that remedy, this court would have to order it, because if it went-and that's what our opinion- The question is, would you object that it would be an illegal sentence? We would not object to the ruling of this court, and that would then be the law that the district court would have to follow. The district court otherwise, if it were to just go back without an order of this court for the government to recommend that it follow this, I think it's very likely the court would not follow that recommendation, because it conflicts with Section 924C, which requires a 25-year mandatory sentence. So I think it would have to come from this court, as it did Imoskowitz. And certainly that is one possible remedy here. But again, it speaks to the whole oddity here of saying that a person who was so insistent on representing himself pro se, and then received an actual sentence less than what the court warned, less than what this court would enforce under Judge Greenberg's suggestion. It doesn't matter what you get, though, because you have to look at the time the decision is made to go it alone, right? You do. For that to be knowing, intelligent, voluntary, you need to have the proper facts at your disposal when you make that decision. You do. And my bottom line argument, Your Honor, is that I would submit reading this record, which is this court's job to do, to see if this was voluntary and knowing, there can be no doubt whatsoever that this man wanted to represent himself. By the way, he had represented himself quite effectively. He told the court in his previous case, the murder case in Delaware County. Originally, it's in the record, he was charged in Delaware County with first-degree murder. And he pled that to third-degree murder and got the 15 to 30-year sentence that's part of what I've been talking about. So he walks into this court and he says, I want to do this again. And he says, but I want standby counsel. He knows the lingo. He knows exactly what he wants. He wants to do what he did in Delaware County. He thinks he knows best. He goes to trial, vigorously represents himself at sentencing, and now he's sitting convicted and obviously not pleased with the situation. And for the first time comes to this court and says, oh, no, if I knew that there was this 20-year gap at the tail end of all this time I'm looking at, I need a lawyer. I would absolutely ask for a lawyer. Do you agree with Mr. Dreyer that if we agreed with the appellant that it would have to vitiate all of the convictions? Yes, I do. I do. Because we're dealing here with the right to counsel at trial. And if he shouldn't have had the benefit of counsel, then I don't think we could defend any part of that trial. So I do agree with that. The rule of law, then, it's, you know, even if we assume for a minute you've got the equities in your favor and from a real-world perspective you've described the situation as it is, as I understand it the rule of law would be even when the trial judge misinforms you about the punishment that you're facing, if the facts are extreme enough, if the district judge, as Judge Padova did here, demonstrates that he bent over backwards to try to convince you not to represent yourself, then this Court makes an exception and holds that the waiver was knowing, intelligent, and voluntary. Well, that's right. Even though the waiver is premised on, in part at least, I guess you're saying it's not premised on misinformation because you're saying the misinformation was immaterial. It was immaterial. It was irrelevant. And I'm not suggesting I agree with everything Your Honor said except I don't agree that this is an exception. I think we are within the rule of law that this Court looks at the totality of the circumstances to see whether the waiver was knowing and voluntary. But can you cite any case anywhere, forget this circuit alone, where a defendant was misadvised of the potential exposure and that was deemed a knowing, intelligent, and voluntary waiver? I cannot cite a case, and I certainly cannot cite a case like this one where the facts were as they are. If I could turn the tables a bit, what if you have a case in which the maximum is 51 years and the judge at the waiver colloquy says 50 and makes a mistake by one year? Are we going to require the district court to retry that defendant, bring in all the jurors and witnesses again and do it all over again because there was a one-year mistake? No court has held that either. In your hypothetical, aren't you going to run down the slippery slope? Sure. It's great. Let's start 50-50. I love it. Okay. How about 50-53? How about 50-55? 50-57? Where are we to draw the line? How about 20 and 40 but the defendant is 50 years old? The answer, and I've had the privilege of arguing before this court so many times, and the slippery slope argument comes up over and over again is where do we draw lines? We all went to school together. Of course. Of course. Where do we draw lines when errors come up? The best answer I've been able to give over the years is we do it on a case-by-case basis. Our system involves case-by-case adjudication and that if you have that 20-40 case, that's why we have this court to make the tough call. If you have my case, it's probably an easy call, the one I suggested of 50-51. I also don't think this case is challenging. I think we're at an outer extreme. Where will the law be drawn as to when the mistake becomes material? Well, we've seen it in some other cases. I suggested one at the beginning that if the person is only told five years and he's facing life. There was a Ninth Circuit case where he was told 15 years and was really 25 and there were no other circumstances involved and that was found to be an error. Through this process of adjudication, we'll find the line, but I think in this case we're far away from it. I don't have any questions. Thank you, Mr. Felsenberg. Thank you very much. Rebuttal, Mr. Dreyer. Thank you, Your Honor. Mr. Zalzmer focused mainly on the maximums. The crux of my argument is the mandatory minimum of 25 years and the consecutive nature of that mandatory minimum by statute. That's critical information to anyone, no matter his past, no matter his future, who at a time is talking with a trial court judge about whether or not he should be waiving his right to have counsel. And certainly most people who are waiving their right to have counsel think that they can do it better. They're adamant on it. They've had their lawyer tell them for 50 days, you're making a mistake. They have the judge looking them in the eyeball and saying, you're making a mistake. So to overcome all those objections and still insist on doing it themselves, obviously they're going to be adamant in wanting to do it. And I'm sure in any of those other cases, the record will probably confirm that they are adamant. So I don't see that as an issue here. Whether he was adamant or not is irrelevant. He was not given the information he needed, and as a result, as Judge Hardiman has pointed out, his waiver was not knowing. How can it possibly be knowing if he doesn't know the most significant aspect of what he's about to do, which is the range of potential sentences. Suppose the judge, in fact, did give him a 25, didn't he? The judge never mentioned 25 as a upper limit. Now, what did he give him with the sentence? Oh, he gave him 25 consecutive years. Suppose we told the judge, sentence him over again, but you can give him a 5. I would have no problem with that. If you kept the upper limit at 5. That's consistent almost with Moskowitz, the remedy in Moskowitz, right? Sure, and that's consistent with what the judge told the defendant at the convoy. I don't know whether this case could become a Moskowitz remedy because everything the court said about, God, look what this guy was facing anyhow and look what he got, would apply to the government, too. In other words, what do you need, blood? I mean, the guy's gone forever. At best, he's gone forever. I agree. Thank you. All right, thank you, Mr. Dreyer. Mr. Salzberg's case was wonderfully briefed and argued by both sides. We'll take the matter under advisement. Good afternoon, sir.